IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NORTH EMERSON-WEST, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | C.A. No. 78-14 SLR |
| v. ) | |
| ) | |
| WALTER REDMAN, et al. ) | |
| ) | |
| Defendants, ) | |

### AFFIDAVIT OF PAUL HOWARD

PAUL HOWARD, having been duly sworn according to law, deposes and states as follows:

1. I am currently employed by the State of Delaware, Department of Correction as the Chief of Bureau of Prisons. I have held that position since 1996. I have been employed by the Department of Correction since 1973. My current responsibilities include supervising the operations and management personnel (including wardens) of all the prisons in the State of Delaware. These responsibilities include security, classification, transportation, human resources, treatment, and basic logistics (such as feeding).

2. The Department of Correction (DCC) Code of Penal Discipline mandated by the Consent Order has caused multiple serious problems for the Department of Correction. It has the following results that are harmful to the orderly operation of the Delaware prisons: (1) it creates inconsistent standards between prisons, as all other institutions have one Code of Penal Discipline and DCC has another, different one— depriving the Department of the ability to promulgate uniform rules of conduct

throughout the system; (2) it promotes disparate inmate treatment among inmates of different institutions under the point-based classification system, which scores inmates on institutional behavior that may be disciplined differently at the different institutions;

(3) it does not permit more than 30 days of good time to be revoked at DCC under any circumstances—thereby weakening an important administrative tool and disincentive for disruptive or violent inmate behavior; (4) the current DCC Code of Penal Discipline contains no provision for modification or updating of the rules—thus, for example, illicit use of tobacco or failure to participate in treatment programs cannot be added as offenses at DCC, and restitution as a sanction cannot be ordered; and (5) the requirement under the current DCC Code of Penal Discipline that appeals of an inmate disciplinary offense go to the central DOC administration (Commissioner, Bureau Chief, or designee) has caused extensive delays in resolution of disciplinary proceedings at DCC. When this requirement and the Code of Penal Discipline were first imposed, the population of DCC was much smaller—it was 830 in 1982, whereas today it is 2400. There is a substantial backlog of appeals to the central DOC office, and the delay in resolving disciplinary offenses at DCC frequently has an unnecessarily adverse effect on an inmate's classification. Not only do the appeals cause delay under the Code of Penal Discipline at DCC, but the hearings are back-logged as well. The newer DOC disciplinary code used at the other institutions allow minor violations to be addressed in a more expedient manner by utilizing the unit building staff in the hearing process. This allows for more local involvement in the process as the staff are more knowledgeable of the particular inmates. Removing minor violations from the formal adjustment board hearing process provides greater opportunity for the hearing

officer to address major institutional violations. At the same time, the newer code provides basically the same protections and process as under the DCC Code of Penal Discipline.

_____
Paul Howard

ACKNOWLEDGED, SWORN TO AND SUBSCRIBED before me on this 6th day of October, 2005.

_____
Notary Public